UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

IN THE MATTER OF THE

COMPLAINT OF MLC FISHING, INC.,
AS THE OWNER OF THE VESSEL
"CAPT MIKE," THE PLAINTIFF FOR
EXONERATION FROM OR
LIMITATION OF LIABILITY.

MEMORANDUM
AND ORDER

08CV3056 (SJ) (RER)

-------------------------------------------------X

A P P E A R A N C E S
Badiak & Will LLP
106 Third Street
Mineola, NY 11501
By:     Alfred J. Will
Attorneys for MLC Fishing, Inc.

Birbower, Beldock & Margolis, P.C.
151 North Main Street
P.O. Box 1010
New City, NY 10956
By:     Steven Beldockm,
Attorneys for Defendant Velez

The Law Office of John P. Humphreys
3 Huntington Quadrangle, Suite 102s
Melville, NY 11747
By:     David I. Robinson
Attorney for Benfica d/b/a Splash Laundromat

JOHNSON, Senior District Judge,

      Pending before the Court is defendant Julio Angel Velez's ("Defendant" or

Velez") motion to dismiss or, in the alternative, for summary judgment. Based on

1

the submissions of the parties, and for the reasons stated below, Defendant's motion is granted pursuant to Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

On or about September 22, 2007, Defendant Velez allegedly suffered injuries at Captain Mike's Marina in Howard Beach, New York. (Complaint ¶ 7.) Thereafter, Defendant filed an action in the Supreme Court of Queens County (the "State Court Action") against, among others, MLC Fishing, the plaintiff herein ("Plaintiff" or "MLC"). (Docket No. 1 at 14.) MLC is the owner of the vessel "CAPT MIKE" ("CAPT MIKE"), on which Velez, on the date in question, intended to embark on a fishing expedition. (Pl. R. 56.1 Stat. ¶ 2.) However, Velez fell, due to the alleged "slippery, slick, greasy, oily, traplike, dangerous and hazardous condition" of the "premises and ramp." (State Court Complaint ¶ 93.)

In order to board the CAPT MIKE from the marina, Velez was required to (and, indeed, anyone would be required to) descend a metal ramp which is neither attached permanently to the land nor to the CAPT MIKE (the "Ramp"). The Ramp leads to a floating dock, which itself must be traversed to access the steps to the CAPT MIKE. Because of the accident, Velez never boarded the CAPT MIKE.

MLC filed the instant action pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, et seq., which is premised on the Court having subject matter jurisdiction in admiralty. Velez then moved to dismiss the action based on the absence of subject matter jurisdiction. Specifically, Velez argues that

admiralty/maritime jurisdiction does not exist because accident did not occur aboard the CAPT MIKE.  MLC in turn argues that the injury did not occur upon land but upon an "appurtenance of the vessel because [the Ramp and/or floating dock] served as the vessel's *only means of ingress and egress*, and was thus the equivalent of the vessel's gangway."  (Pl. Mem. in Opp'n at 6 (emphasis in original).)

DISCUSSION

I. Admiralty Tort Jurisdiction

"A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extends' federal judicial power 'to all Cases of admiralty and maritime jurisdiction.'"  Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531 (1995) (quoting U.S. Const., Art. III, § 2).  "The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters.  If it did, admiralty jurisdiction followed; it if did not, admiralty jurisdiction did not exist."  Jerome B. Grubart, 513 U.S. at 531-2.  The Extension of Admiralty Jurisdiction Act of 1948 extended jurisdiction to include "all cases of damage or injury, to person or property, caused by a vessel on navigable waters, notwithstanding that such damage or injury be done or consummated on land."  46 U.S.C. § 30101. et seq.  Therefore, the tort must either occur on navigable waters or be caused by a vessel on navigable waters. See In re Katrina Canal Breaches Litigation, 324 Fed. Appx. 370, 376 (5th Cir. 2009); In re Aramark Leisure Servs., 523 F.3d 1169, 1174-5 (10th Cir. 2008); In re Air Crash at Belle Harbor, New York

on November 12, 2001; 2006 WL 1288298, at *8 (S.D.N.Y. May 9, 2006). Moreover, a trilogy of Supreme Court cases has added the requirement that the wrong bear some connection to "traditional maritime activity." Jerome B. Grubart, 513 U.S. at 532-534 (quoting, inter alia, Sisson v. Ruby, 497 U.S. 358 (1990); Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982) and Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249 (1972)). In sum, a party seeking to invoke the court's admiralty jurisdiction must meet both a "location" and "connection with maritime activity" test.

There appears no dispute that, if the Ramp on which Velez was injured may properly be considered part of the CAPT MIKE vessel, there is a connection with maritime activity. See Foremost, 457 U.S. at 672-5 (pleasure boating connected to traditional maritime activity).; LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999) (same); Matter of Guglielmo, 897 F.2d 58, 61 (2d Cir. 1990) (same). Therefore, this Court's inquiry surrounds only the question of location, to wit: whether the Ramp is part of the CAPT MIKE.

In the most analogous case from this circuit found by both the parties and the Court, the answer is no. In Dobrovich v. Hotchkiss, 14 F. Supp. 2d 232 (D. Conn. 1998), the Court faced the question of "whether a ramp leading to *floating* docks, which must be traversed to reach the location where the ship is moored, should not be considered an extension of the land," precisely the same question facing this Court. Id. at 234 (emphasis in original). That court recognized that, under the

Admiralty Extension Act, "[w]hen it is a ship's gangway that is defective, it can be said that the vessel caused the injury." Id.; accord Victory Carriers Inc. v. Law, 404 U.S. 202, 207 (1972) ("The gangplank has served as a rough dividing line between the state and maritime regimes."). The Dobrovich court found that a ramp is not a gangway, and the parties agree that Dobrovich is instructive. MLC argues that Dobrovich is distinguishable because the ramp in that case was permanently affixed to the land, while the Ramp on which Velez was injured is not.

However, the Dobrovich court gave no quarter to this distinction. 14 F. Supp. 2d at 234 n.6 (deeming irrelevant the permanence of the ramp's affixation to land). The court there was more persuaded (as is this Court) by the physical attenuation of the vessel from the ramp, separated as they were by floating docks. Id.; see also Ellis v. Riverport Enter., 957 F. Supp. 105 (E.D. Ky. 1997) (no jurisdiction where injury occurred on floating walkway connecting dock to land).

None of the other cases relied upon by MLC support a finding that a ramp leading to a floating dock which itself leads to a vessel ought to be considered its "gangway." Scheuring v. Taylor Bros., Inc., 476 F.3d 781 (9th Cir. 2007) does not hold that "a ramp which is necessarily used for embarking and disembarking becomes a basic appurtenance of the vessel," as Plaintiff cites. Schuering merely states that "*[s]ome our our sister circuits have*" made that holding. Id. at 790 (emphasis added) (citing Sarauw v. Oceanic Navigation Corp., 655 F.2d 526 (3d Cir. 1981); and Romero Reyes v. Marine Enter., 494 F.2d 866 (1st Cir. 1974)).

5

However, neither of those circuits held that a ramp is equivalent to a gangway for the purposes of admiralty jurisdiction or the Limitation of Liability Act.

In Sarauw, the injury indisputably involved a gangway. Id. at 527 ("[D]ue to the negligence of the officers of the [vessel] . . . the gangway, when [plaintiff] attempted to board the vessel by means of it, fell to the dock, [plaintiff] thereby sustaining the injuries complained of.") The injury there occurred on the gangway provided by the stevedoring company, as opposed to the vessel herself. Id. at 528. The court did not venture to define gangway, but held that the vessel owner nevertheless had a duty to maintain the gangway in a safe condition. Id. Similarly, the Romero Reyes court did not seek to determine whether a ramp constituted a gangway. It was taken as given that the injury occurred on a gangway and the court's inquiry surrounded whether the vessel owner owed the plaintiff a duty of care with respect to a gangway that was neither owned nor controlled by the vessel owner. 494 F.2d at 869.

Therefore, the Court finds the reasoning in Dubrovich persuasive and will not extend admiralty jurisdiction by defining a gangway as including a ramp separated from the vessel by floating docks.

*Admiralty Extension Act*

Plaintiff alternatively argues that jurisdiction exists under the Admiralty Extension Act, which covers injuries made by vessels "notwithstanding that such

damage or injury be done or consummated on land." 46 U.S.C. § 30101(a). Plaintiff asserts that injuries caused by CAPT MIKE's crew would thus be covered, as the crew and personnel of the CAPT MIKE were solely responsible for maintenance of the ramp. (Cannon Aff. ¶10.) But again, the connection between the cases cited by Plaintiff and the facts of the instant case is attenuated.

In Gutierrez v. Waterman Steamship Corp., 373 U.S. 206 (1963), the Supreme Court found that "[t]here is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel *while operating it*." Id. at 210 (emphasis added). Indeed, the holding in Gutierrez was quite narrow: finding jurisdiction where "the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." Id.; accord Gebhard v. S.S. Hawaiian Legislator, 425 F.2d 1303 (9th Cir. 1970); Christiansen v. Big Island Fish Connection, Inc., 885 F. Supp. 207, 210 (D. Hi. 1994). A conclusory allegation that the CAPT MIKE crew maintained the ramp in an unsafe condition is not sufficiently similar to the operation of a vessel to permit the leap from Gutierrez and its progeny to the fact presented here. See also Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc., 182 F. Supp. 2d 537, 544 (W.D. La. 2001) (trespass claim covered under Admiralty Extension Act where dredged material from river channel deposited on land without owner's consent); Coggins v. James W. Elwell and Co., 356 F. Supp. 612, 614 (E.D. Pa. 1977) (independent basis for jurisdiction under the Jones Act); Maryland Port Admin. v.

S.S. Amer. Legend, 453 F. Supp. 584, 587-8 (D. Md. 1978) (accident occurred while vessels were being berthed and unloaded); Butler v. American Trawler Co., 707 F. Supp. 29, 30 (D. Maine 1989) (plaintiff injured when lowering herself down part of the vessel's rigging). Accordingly, the Court finds that the Admiralty Extension Act does not apply to this case.

   II.   Maritime Contract Jurisdiction

Plaintiff alternatively argues that maritime jurisdiction attaches "to all contracts . . .which relate to the . . . business or commerce of the sea " under Sirius Ins. Co. (UK), Ltd. V. Collins, 16 F.3d 34 (2d Cir. 1994), and that Velez's group was part of "a group of 20-25 employees of a company which partially chartered the 'CAPT MIKE." (Pl. Mem. in Opp'n at 14.). However, Sirius involved a contract dispute, and Velez has made no contract claim in the State Court Action. Therefore, this argument, too, is without merit.

   Plaintiff's remaining arguments are without merit.

## CONCLUSION

For the foregoing reasons, the action is dismissed for want of subject matter jurisdiction.

SO ORDERED.

Dated: February 16, 2010          _____/s/_____
       Brooklyn, NY                    Sterling Johnson, Jr., U.S.D.J.